BOOMGAARDEN, Justice.
[¶1] Appellant Kirk Broberg, Jr. appeals from his conviction of second degree sexual assault contending the district court improperly admitted W.R.E. 404(b) evidence. We affirm.
ISSUE
[¶2] Mr. Broberg presents the issue on appeal as: Did the trial court abuse its discretion by admitting evidence of prior bad acts absent notice from the State of its intent to offer such evidence and without conducting a Gleason hearing?
FACTS
[¶3] In the summer of 2015, Mr. Broberg lived with his first cousin, ML, her husband, and their children. On August 12, 2015, ML invited several people to their home for a bonfire, food, and drinks. Later in the evening, Mr. Broberg's girlfriend, AB, and her friend stopped by to see Mr. Broberg. Mr. Broberg and AB went into a bedroom and had intercourse. Thereafter, AB left the residence with her friend.
[¶4] Around 10:30 p.m., ML and her husband went to bed and had intercourse. ML's husband left the room to watch a movie with the children in the living room, where he fell asleep. ML remained in the bedroom sleeping on her stomach. Mr. Broberg entered the room and awoke ML by engaging in sexual intercourse with her from behind. The room was dark and he pushed ML's head down into the pillow while whispering, "Don't wake the boys." ML believed he partially stuck his finger or his thumb into her anus as he whispered, "Are you ready for this?" ML quickly pulled away and said, "Not tonight, Babe," but continued having sexual intercourse believing she was having sex with her husband. Eventually, Mr. Broberg spoke in his regular voice and ML realized the man was Mr. Broberg. She immediately stopped the activity and covered up with her comforter. Mr. Broberg left the room, but came in a few minutes later and offered ML a cigarette. By this time, ML had turned on a light and was sitting on the edge of the bed, enabling her to observe Mr. Broberg's dark, black boxers with what she thought to be the "Martian from the Looney Toons ... the cartoon guy" imprinted on them. After Mr. Broberg left the room again, ML went to the living room and woke her husband to tell him what happened. The couple confronted Mr. *169 Broberg, who denied the incident and left the residence.
[¶5] The following day, ML went to the emergency room where hospital staff reported the matter to law enforcement. The hospital staff performed a sexual assault examination with an officer present. Law enforcement officers gathered additional DNA samples from swabbing the cheeks of Mr. Broberg, ML, and her husband, a few days later. They also executed a search warrant and obtained a pair of Mr. Broberg's boxer shorts with an image of Eric Cartman[1] on them, along with other physical evidence from the residence.
[¶6] The State Crime Lab analyzed the DNA samples provided and confirmed Mr. Broberg, ML, and her husband all contributed to the DNA mixture obtained from Mr. Broberg's boxers, along with a fourth unknown contributor. Thereafter, the State charged Mr. Broberg with two counts of second degree sexual assault in violation of Wyo. Stat. Ann. § 6-2-303(a)(iv) (Lexis Nexis 2017). Count I alleged anal penetration and Count II alleged vaginal intercourse.
[¶7] Prior to trial, Mr. Broberg filed a demand for disclosure of W.R.E. 404(b) evidence. The State disclosed no such evidence. At trial, the State called AB as a witness. She testified about having intercourse with Mr. Broberg earlier that night; he "stuck his finger in [her] butt," and he did not ejaculate. Mr. Broberg's counsel did not object to this testimony. The State also called AB's friend, who testified she observed Mr. Broberg wearing a pair of black boxers with Eric Cartman on them on the night of the party.
[¶8] Mr. Broberg's counsel moved for judgment of acquittal after the State rested. The district court denied the motion, finding the State presented sufficient evidence to establish a prima facie case.[2] Mr. Broberg then moved for a mistrial claiming portions of AB's testimony were improper pursuant to W.R.E. 404(b) and prejudicial. After taking the motion under advisement and allowing the defense to present its case, the district court denied the motion for mistrial. In its ruling, the district court prohibited the State from making any arguments Mr. Broberg acted in conformity with the events with his girlfriend and the alleged sexual assault of ML, but allowed the State to use the evidence to explain to the jury why there were four different sets of DNA on Mr. Broberg's boxers. Mr. Broberg's counsel declined the court's offer to provide a curative instruction, hoping to avoid calling more attention to AB's testimony.
[¶9] The jury convicted Mr. Broberg of one count of second degree sexual assault for the vaginal intercourse, but acquitted him of the count related to anal penetration. Mr. Broberg timely appealed his conviction challenging the admission of W.R.E. 404(b) evidence relative to AB's testimony, absent notice from the State of its intent to introduce the evidence and a hearing pursuant to Gleason v. State , 2002 WY 161, 57 P.3d 332 (Wyo. 2002).
DISCUSSION
[¶10] Mr. Broberg asserts the district court abused its discretion by admitting AB's testimony concerning digital penetration, which he classifies as improper and unnoticed W.R.E. 404(b) evidence. The State contends the evidence does not implicate W.R.E. 404(b), but even if it does, admission of the testimony did not prejudice Mr. Broberg.
[¶11] Prior to trial, Mr. Broberg filed his demand for notice of W.R.E. 404(b) evidence, but the State did not respond to the demand. During the trial, the State elicited the following testimony from AB about her intercourse with Mr. Broberg:
Q. Do you remember during that intercourse, did Mr. Broberg ejaculate?
A. No.
Q. Do you remember anything else about the intercourse?
A. Anything specific?
Q. Yes, ma'am.
A. Like how specific?
*170 Q. Do you remember any other distinguishing acts or memorable acts that were committed during the sexual intercourse?
A. Stuck his finger in my butt.
Mr. Broberg did not object to this testimony.
[¶12] The following day, after the State rested its case, Mr. Broberg's counsel moved for a mistrial. The State responded that the testimony about Mr. Broberg's failure to ejaculate did not fall within the scope of W.R.E. 404(b). The State did not make the same claim as to the digital anal penetration testimony. The State did not directly concede the penetration testimony was inadmissible to prove the character of Mr. Broberg. However, it proffered an alternative purpose for the testimony which could make it admissible under W.R.E. 404(b). That purpose, according to the State, was to show the potential source of DNA from an unknown fourth person found inside Mr. Broberg's boxers. The State further argued the facts of the case were well-known to the parties and disclosed prior to trial, although the State recognized AB's trial testimony slightly differed from her written, pretrial statement.[3] Nonetheless, the State informed the court it would not object to a "curative" jury instruction:
The State will not object if there is a need for a curative instruction. I'll leave that up to the court and defense. If there is to be a curative instruction, perhaps it should state essentially the language right out of 404(b) . We have a jury that's sworn to follow the law. I'm confident they will. And if they are instructed that they are not to consider that act for anything other than the transfer of the DNA, I'm confident that the jury can make that determination and will follow the law as instructed by the court.
(Emphasis added.)
[¶13] In denying Mr. Broberg's motion for a mistrial, the district court did not expressly state whether it found AB's testimony to be inadmissible 404(b) character evidence, but it limited the purpose for which the State could use AB's testimony about digital penetration and offered to provide a "curative" jury instruction applying language from W.R.E. 404(b) :
THE COURT: All right. I'm going to read the curative instruction on the record then and indicate that you wish and desire that it not be read to the jury. 'The State has presented evidence of sexual contact between the defendant and his girlfriend for the purpose of demonstrating a possible transfer of DNA. You are not to consider the evidence for any other purpose including that defendant acted in conformity with any other acts. ' That would be the proposed [instruction] by the court. Given your preference, Ms. Schneider, and the fact that this may call attention, the court is going to find it appropriate then not to give that jury instruction.
(Emphasis added.)
[¶14] Implicit in the district court's offer of an instruction limiting the purpose for which the jury could consider AB's testimony is the conclusion the evidence of digital penetration was inadmissible under W.R.E. 404(b) to prove Mr. Broberg's character, but was admissible for a different purpose. See Reay v. State , 2008 WY 13, ¶ 16, 176 P.3d 647, 652 (Wyo. 2008) (citing Thomas v. State , 2006 WY 34, ¶ 36, 131 P.3d 348, 358 (Wyo. 2006) ). We agree AB's testimony relating to *171 digital anal penetration is inadmissible character evidence under W.R.E. 404(b) and could not be used to show Mr. Broberg acted in conformity with such character on this occasion. However, we disagree evidence of digital anal penetration on AB was admissible to show the source of unknown DNA on Mr. Broberg's boxer shorts. The record contains nothing to support the notion that Mr. Broberg's act of digital anal penetration on AB somehow was related to the unknown DNA. Absent some logical or testimonial foundation connecting that act with the unknown DNA, the evidence was simply not relevant to the alternative purpose suggested by the State. We conclude the State improperly elicited the testimony about digital anal penetration to show Mr. Broberg acted in conformity with that sexual activity during his sexual assault of ML.
[¶15] Mr. Broberg raises the inadmissibility of the 404(b) evidence on direct appeal of his criminal conviction and does not challenge the denial of his motion for mistrial.
We review challenges to the admission of evidence for an abuse of discretion when an objection has been lodged. Cardenas v. State , 2014 WY 92, ¶ 7, 330 P.3d 808, 810 (Wyo. 2014). "[W]here a defendant files a pretrial demand for notice of intent to introduce evidence under W.R.E. 404(b), the same shall be treated as the making of a timely objection to the introduction of the evidence." Howard v. State , 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo. 2002).
Hodge v. State , 2015 WY 103, ¶ 8, 355 P.3d 368, 370-71 (Wyo. 2015). If we determine the court abused its discretion in admitting 404(b) evidence, "we must also determine whether the error was prejudicial." Mersereau v. State , 2012 WY 125, ¶ 17, 286 P.3d 97, 106 (Wyo. 2012) (citation omitted).
[¶16] Mr. Broberg filed a pretrial demand for disclosure of 404(b) evidence, thereby timely objecting to the introduction of 404(b) evidence and permitting our review for an abuse of discretion. Howard , ¶ 23, 42 P.3d at 491. However, application of the abuse of discretion standard is difficult in this matter. Typically, when a defendant files a demand for disclosure of W.R.E. 404(b) evidence, the State provides notice of the 404(b) evidence it intends to introduce, the trial court is alerted to the evidentiary issue, and a pretrial Gleason hearing is held.[4] See, e.g. , Volpi v. State , 2018 WY 66, ¶¶ 11-12, 419 P.3d 884, 888-89 (Wyo. 2018) ; Howard , ¶ 23, 42 P.3d at 491 ; Vigil v. State , 926 P.2d 351, 354 (Wyo. 1996). This sequence of events enables us to review the district court's evidentiary ruling for an abuse of discretion.
[¶17] In this case, we are unable to review a 404(b) evidentiary ruling made in the usual course. After receiving Mr. Broberg's demand, the State failed to disclose its intent to use W.R.E. 404(b) evidence and failed to provide the purpose for admission of such evidence prior to trial. The State's omissions prevented the district court from holding the required Gleason hearing prior to admission of the 404(b) evidence. Mr. Broberg's counsel did not object to the evidence during *172 AB's testimony to obtain a more timely evidentiary ruling. At the point Mr. Broberg's counsel moved for mistrial, the State and the district court implicitly treated AB's testimony as 404(b) evidence and the State offered an alternative purpose for the admission of a portion of AB's testimony, which the district court adopted. This sequence of events precluded the district court from conducting a meaningful or timely Gleason analysis.[5]
[¶18] A similar dilemma on review occurred in Schreibvogel v. State , where we explained "that application of an abuse of discretion standard is difficult, if not impossible, in a situation where the issue is not brought to the attention of the district court for an evidentiary ruling." Schreibvogel v. State , 2010 WY 45, ¶ 33, 228 P.3d 874, 885 (Wyo. 2010). We recognized that even though a pretrial demand for notice of the State's intent to use 404(b) evidence satisfies the objection requirement, without an objection at trial, "the district court ha[s] no opportunity to make a determination as to whether the evidence [is] 404(b) evidence and, if so, whether it [is] admissible for a proper purpose under that rule." Id . We also noted it is "not always clear whether the State intended to introduce the evidence or whether the evidence is '404(b) evidence.' "[6] Id. at 886. For those reasons, we strongly urged defense counsel to "raise an objection at trial to any evidence that may run afoul of W.R.E. 404(b)." Id. Though in this case, the State absolutely should have identified the digital anal penetration evidence as potential 404(b) evidence. See W.R.E. 404(b) ; Howard , ¶ 23, 42 P.3d at 491 ; Gleason , supra .
[¶19] While recognizing the district court was unable to make a meaningful and timely evidentiary ruling under the circumstances of this case, AB's testimony, which fell within the purview of W.R.E. 404(b), was erroneously admitted, without the required Gleason analysis. Accordingly, our decision turns on whether the admission of AB's testimony prejudiced Mr. Broberg. "Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made." Vigil v. State , 2010 WY 15, ¶ 11, 224 P.3d 31, 36 (Wyo. 2010). "Prejudicial error requires reversal, while harmless error does not." Payseno v. State , 2014 WY 108, ¶ 20, 332 P.3d 1176, 1182 (Wyo. 2014) (quoting Nelson v. State , 2010 WY 159, ¶ 29, 245 P.3d 282, 289 (Wyo. 2010) ). We conclude Mr. Broberg was not prejudiced by the admission of the evidence.
[¶20] First and foremost, the jury acquitted Mr. Broberg of the sexual assault charge related to anal penetration, which demonstrates the lack of prejudice resulting from that portion of AB's testimony which the district court implicitly considered inadmissible 404(b) evidence. Moreover, the challenged testimony was a brief, isolated statement. Neither the State nor the defense counsel referenced AB's testimony as to digital anal penetration during closing. Further, the other evidence introduced at trial provided compelling evidence of Mr. Broberg's guilt. ML testified she believed Mr. Broberg was her husband until she recognized Mr. Broberg's voice. ML then witnessed Mr. Broberg leaving her room wearing dark, black boxers. AB's friend also observed Mr. Broberg wearing black boxers, noting they were imprinted with the Eric Cartman character.
*173 Law enforcement officers retrieved a pair of boxers, which matched the witnesses' description and contained ML's DNA. For these reasons, we find no reasonable possibility the verdict would have been different without the testimony of Mr. Broberg's girlfriend, AB.
[¶21] Affirmed.

Eric Cartman is a cartoon character from the television series, South Park .

The district court also denied Mr. Broberg's renewed motion for acquittal after the close of evidence.

The State's pretrial statement, as amended, states AB's testimony "may include, but is not limited to, eye witness testimony, and foundational testimony for entry of exhibits." The pretrial statement also lists AB's witness statement as a potential exhibit; however, the written statement is not part of the record on appeal. It is not apparent from the record or the parties' briefing whether any discrepancies between AB's written statement and her trial testimony pertained to both Mr. Broberg's failure to ejaculate and the digital anal penetration. The lack of a complete record makes it impossible for us to determine whether the pretrial statement provided Mr. Broberg constructive notice of the potential 404(b) evidence or whether AB's testimony exceeded the scope of the pretrial statement such that he was unfairly surprised. See, e.g. , Leyva v. State , 2007 WY 136, ¶ 32, 165 P.3d 446, 455 (Wyo. 2007) (explaining that "[w]hen there is any question that evidence is subject to W.R.E. 404(b), the State should list that evidence in response to a defendant's pretrial demand." However, the defendant did not assert nor did the record suggest, the prosecution failed to list the evidence in bad faith, or to surprise the defendant unfairly at trial.).

During the pretrial Gleason hearing, the following factors are considered in determining admissibility of evidence:
(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.
Gleason , ¶ 18, 57 P.3d at 340 (citations omitted). Further, trial courts are to consider the following five factors when analyzing the probative value of prior bad acts evidence:
1. How clear is it that the defendant committed the prior bad act?
2. Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?
3. Is other evidence available?
4. Is the evidence unnecessarily cumulative?
5. How much time has elapsed between the charged crime and the prior bad act?
Gleason , ¶ 27, 57 P.3d at 342. The trial court must also identify the purpose or purposes for admission of the evidence, articulate its findings regarding relevance and probative value, and list the factors it considered in balancing probative value against the potential for unfair prejudice. Id. ¶ 30, 57 P.3d at 343 ; Volpi , ¶ 13, 419 P.3d at 889.

The district court appropriately considered the purpose of identifying the unknown DNA on Mr. Broberg's boxer shorts and offered a limiting instruction, but did not conduct a complete Gleason analysis when it ruled on the motion for mistrial. Since Mr. Broberg's trial, we have elaborated on the timing of a Gleason analysis. Garrison v. State , 2018 WY 9, ¶ 18, 409 P.3d 1209, 1215 (Wyo. 2018) (emphasis added) (holding "that, at a minimum, the Gleason analysis must be made contemporaneously with the ruling on admissibility and prior to the admission of any 404(b) evidence "). Applying Garrison , even if the district court had conducted a complete Gleason analysis, the analysis would have had little value given that AB's testimony had already been received. Id. ("An after-the-fact application of the factors to evidence that has already been admitted to trial is not helpful or meaningful. The court is unlikely to find evidence anything other than admissible once it has already been admitted and the trial has concluded.").

In Schreibvogel , we determined that the State did not intend to use evidence of the defendant's drug use because it did not specifically elicit such testimony and, therefore, it was not required to give the defense notice of its intent to use 404(b) evidence. Schreibvogel , ¶ 35, 228 P.3d at 886.