# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 14

### OCTOBER TERM, A.D. 2013

### January 27, 2014

JESUS ANTONIO GONZALEZ-OCHOA,

Appellant
(Defendant),

v.

No. S-12-0281

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Platte County*
*The Honorable Keith G. Kautz, Judge*

*Representing Appellant:*

Office of the State Public Defender:  Diane M. Lozano, State Public Defender; Elisabeth M. W. Trefonas, Assistant Public Defender.  Argument by Ms. Trefonas.

*Representing Appellee:*

Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Jeffrey S. Pope, Assistant Attorney General; Jennifer E. Zissou, Assistant Attorney General.  Argument by Ms. Zissou.

*Before KITE, C.J., and HILL, VOIGT\*, BURKE, and DAVIS, JJ.*

*\*Justice Voigt retired effective January 3, 2014.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Justice.**

[¶1]   Appellant, Jesus Antonio Gonzalez-Ochoa, appeals from a judgment and sentence following his conviction on one count of first degree murder.  He raises issues involving assertions of an improper evidentiary ruling, prosecutorial misconduct, and error in instructing the jury.  We find no error and affirm.

## *ISSUES*

[¶2]   Appellant presents these three issues:

> I.    Did the district court admit evidence of uncharged misconduct in violation of Rule 404(b) of the Wyoming Rules of Evidence?
>
> II.    Did the prosecutor engage in misconduct during closing argument by asserting facts not in evidence?
>
> III.    Did the district court err in refusing to give jury instructions proposed by the defense?

## *FACTS*

[¶3]   On the night of June 18, 2011, Christopher Walker was shot and killed in an alley near a bar in Wheatland, Wyoming.  The State charged Appellant with the murder. Evidence at trial showed that Appellant and Mr. Walker had had an antagonistic relationship, at least in part, due to the fact that Mr. Walker's girlfriend broke up with him and began dating Appellant.  On several occasions, Mr. Walker had tried to goad Appellant into fighting with him.

[¶4]   On the night of the shooting, Appellant was at the bar with friends.  Mr. Walker and his neighbor came into the bar, and despite the hostility between Appellant and Mr. Walker, the two groups of men played pool and drank together.  Mr. Walker again tried to instigate a fight with Appellant, and this time Appellant accepted the challenge. They left the bar together but, instead of immediately fighting, went to Appellant's vehicle to talk.  Apparently, they were unable to settle their differences.  Mr. Walker left the vehicle and started walking toward the alley.  Appellant grabbed a rifle that was in his vehicle, and followed Mr. Walker into the alley.  According to the State, Appellant then shot and killed Mr. Walker.  After the shooting, Appellant fled the scene.  He was arrested later that night at his home.  The rifle was found in his vehicle, which was still parked near the bar.  Testing indicated that the bullets recovered from Mr. Walker's body were fired from this rifle.

1

[¶5]   Appellant was the only witness to the shooting.  He denied shooting Mr. Walker, and told the jury that he took his rifle only to "scare" Mr. Walker "so he would leave me in peace."  He testified that when he was walking toward the alley behind Mr. Walker, another person jumped out from behind a vehicle in the parking lot.  According to Appellant, "this person came and pushed me away . . . and he took away the gun; and he is the one that made all the shots; and I heard him say, 'I told you I was going to find you.'"  Appellant did not identify this other person.

[¶6]   The jury apparently rejected Appellant's version of the events and returned a verdict of guilty.  Appellant was sentenced to life according to law.  He filed this timely appeal.

## *DISCUSSION*

### *404(b) Evidence*

[¶7]   In his first issue, Appellant contends that the district court admitted evidence of uncharged misconduct in violation of Rule 404(b) of the Wyoming Rules of Evidence. At trial, the prosecutor questioned Appellant's former girlfriend about the firearms he possessed.  She said he got them after Mr. Walker "approached him wanting to fight." Asked next about people who had been "messing with" Appellant, she said Mr. Walker "was the main one," but that he had also mentioned a few other people.  Following a few questions about Mr. Walker, this exchange occurred:

> Q.    Did you ever make statements when discussing this incident to the effect that [Appellant] had told you people wanted to kill him?
>
> A.    No. . . .
>
> Q.    But were there other conversations about people in general that wanted to kill him?
>
> A.    Yes.
>
> Q.    Did he ever mention anything about the Mafia?
>
> A.    Yes.
>
> Q.    What did he say?
>
> A.    He had said that people from Mexico had called him and were threatening him, and they had his father, who is in

2

Mexico; and they had called [him] and told him to go back to work for them, or with them, or they were going to take his father's life.

The prosecutor shifted to another topic, asked a few more questions, and indicated he had finished examining the witness. At that point, defense counsel asked to approach the bench. The court announced a short break, excused the jury, and heard defense counsel's objection.

> THE COURT: Counsel, what's the issue here?
>
> [Defense Counsel]: Judge, we filed a discovery demand at the very beginning of this case; and we specifically asked for notice of any 404(b) evidence that was going to be offered in this case.
>
> THE COURT: Counsel, what do you think was 404(b) evidence?
>
> [Defense Counsel]: The question about the Mafia, Judge.
>
> THE COURT: And tell me how that question was wrong or an act on the part of the defendant as opposed to someone in Mexico.
>
> [Defense Counsel]: I think whether or not the state believes that my client was involved in the Mafia in any way is classic 404(b) evidence, classic evidence of prior wrongs or bad acts.
>
> THE COURT: And you chose not to object when you heard the question.
>
> [Defense Counsel]: It happened quickly, Judge. I am objecting now.
>
> THE COURT: Okay, thank you. [Mr. Prosecutor?]
>
> [Prosecutor]: Thank you, your Honor. That was elicited by me specifically as to the reasons [Appellant] possessed that weapon. She was testifying as to whether or not he was afraid of [Mr. Walker]. She had previously testified that people were trying to get to him. . . . There were plural other people, and the report on page 11 that has been provided to

3

the defense references the mafia; and I elicited that because I – They are going to go, I believe, even though they reserved their opening statement, with some kind of self-defense defense, and I think it's very relevant to know why he possessed this firearm, because if there are other reasons, other than he was afraid of [Mr.] Walker, I think that's important for the jury to hear, and that's why I asked the question; and I would argue that it certainly isn't 404(b). There was no act elicited. It was in general he had this idea that people were after him, and he needed protection, and that's all it was about for me.

THE COURT: In context, the Court did not interpret that testimony as implying that because of some threat made against the defendant he had any character that would result in conduct. The court didn't interpret it that way.

If you want a limiting instruction, I will think about it; but, I mean, you heard some testimony or something like the mafia. There isn't any kind of evidence that he was involved in any kind of mafia and you should disregard that. I will be glad to do that. But the Court's impression is that it wasn't that impression given anyway.

So I will overrule your objection, and we can talk about a limiting instruction if you want me to give one.

Defense counsel did not ask for a limiting instruction, and the district court did not give one.

[¶8] Appellant contends that the quoted testimony should have been excluded pursuant to W.R.E. 404(b).[1] Our first step in resolving this issue is to determine the proper

---

[1] W.R.E. 404(b) provides as follows:

(b) *Other crimes, wrongs, or acts*. – Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or

standard of review. "Generally, the standard for review of rulings under W.R.E. 404(b) is abuse of discretion. However, where no trial objection occurred, the plain error standard applies." *Gleason v. State*, 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo. 2002) (internal citations omitted).

[¶9] Defense counsel did make an objection on Appellant's behalf, but not immediately after the testimony at issue. In an earlier case involving Rule 404(b) evidence, *Harrell v. State*, 2011 WY 129, ¶ 11, 261 P.3d 235, 238 (Wyo. 2011), an objection was made, but not until after the witness had completed his testimony and was released from his subpoena. We concluded that the objection was not sufficiently contemporaneous with the testimony at issue, and therefore applied the plain error standard of review.

[¶10] Appellant's case is somewhat different. Although the objection was not timely, it was raised only eight questions later. The same witness remained on the stand. The district court had a reasonable opportunity to consider the objection, and most importantly, ruled on the objection. Because the district court made a decision based on Appellant's objection, we will review that decision for abuse of discretion. *Wimbley v. State*, 2009 WY 72, ¶ 10, 208 P.3d 608, 611 (Wyo. 2009).

[¶11] In applying this standard of review, we recognize that a "trial court's rulings on the admissibility of evidence are entitled to considerable deference, and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal." *Sanchez v. State*, 2006 WY 116, ¶ 20, 142 P.3d 1134, 1140 (Wyo. 2006) (citing *Billingsley v. State*, 2003 WY 61, ¶ 9, 69 P.3d 390, 395 (Wyo. 2003)). In addition, even if we conclude that the evidence should not have been admitted, we must ask if the error was prejudicial. *Solis v. State*, 981 P.2d 34, 36 (Wyo. 1999). "Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made." *Vigil v. State*, 2010 WY 15, ¶ 11, 224 P.3d 31, 36 (Wyo. 2010) (citing *Solis*, 981 P.2d at 36).

[¶12] The State contends, as it did in the district court, that this testimony is not the sort of evidence covered by Rule 404(b). The rule applies to "[e]vidence of other crimes, wrongs, or acts," or in other words, evidence of conduct reflecting on character. *Sanchez*, ¶ 21, 142 P.3d at 1140. In the testimony at issue here, the only part that might indicate conduct is the statement that the mafia told Appellant "to go back to work for them, or with them." The district court did not interpret this as evidence of Appellant's conduct or as reflecting on his character. To the extent this is evidence of conduct, it was vague and provided no information about what, if anything, Appellant had actually done for or with

---

during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

the mafia. The district court could reasonably conclude that the testimony was not 404(b) evidence and we find no abuse of discretion in its decision to overrule the objection.

[¶13] Additionally, we are convinced that the verdict would have remained the same if the evidence had been excluded. The challenged testimony was a brief, isolated, and ambiguous mention in the midst of a three-day trial. The other evidence introduced provided compelling evidence of guilt. Appellant admitted having an antagonistic relationship with Mr. Walker. He admitted following Mr. Walker into the alley and taking his rifle with him. A short time later, Mr. Walker was found in the alley with gunshot wounds inflicted by that rifle. Appellant fled the crime scene and provided conflicting versions of the incident to police. We find no reasonable possibility that the verdict would have been different without this brief and vague reference to the mafia.

## *Prosecutorial Misconduct*

[¶14] As mentioned above, Appellant admitted that he took his rifle into the alley with Mr. Walker. The rifle was later found in Appellant's vehicle. During closing argument, the prosecutor said, "I submit to you the evidence shows beyond a reasonable doubt that the defendant . . . place[d] the rifle back in [his vehicle]." Defense counsel objected, asserting there was "absolutely no evidence of the defendant running back to [his vehicle]." The district court did not sustain the objection. On appeal, Appellant asserts that the prosecutor's statement constituted misconduct because it was unsupported by the evidence.

[¶15] "Allegations of prosecutorial misconduct are settled by reference to the entire record and 'hinge on whether a defendant's case has been so prejudiced as to constitute denial of a fair trial.'" *Schreibvogel v. State*, 2010 WY 45, ¶ 39, 228 P.3d 874, 887 (Wyo. 2010), quoting *Mazurek v. State*, 10 P.3d 531, 542 (Wyo. 2000). In this case, Appellant objected to the prosecutor's argument. Accordingly, we apply the harmless error standard of review. *Benjamin v. State*, 2011 WY 147, ¶ 50, 264 P.3d 1, 13 (Wyo. 2011). Before we consider whether the error caused prejudice, we must first find that there was an error. *Hughes v. State*, 658 P.2d 1294, 1296 (Wyo. 1983). Appellant has failed to establish that error occurred.

[¶16] A prosecutor commits misconduct if, during closing argument, he intentionally misstates the evidence. *Dysthe v. State*, 2003 WY 20, ¶ 24, 63 P.3d 875, 885 (Wyo. 2003). However, the prosecution is allowed to argue reasonable inferences from the evidence presented. *Bustos v. State*, 2008 WY 37, ¶ 10, 180 P.3d 904, 908 (Wyo. 2008). An inference is "a deduction from the facts given, which is usually less than certain but which may be sufficient to support a finding of fact." *Ogden v. State*, 2001 WY 109, ¶ 14, 34 P.3d 271, 275 (Wyo. 2001) (quoting *Barron's Law Dictionary* 231 (2d ed. 1984)).

[¶17]  Appellant is correct that there was no testimony indicating he was the one who put his rifle into his vehicle after the shooting.  But reasonable inferences may be drawn from the evidence that was introduced.  *Bustos*, ¶ 10, 180 P.3d at 908.  Appellant admitted that he took the rifle from his vehicle and carried it into the alley with Mr. Walker.  Mr. Walker was shot in the alley with bullets from Appellant's rifle.  The rifle was later found in his vehicle.  Taken as a whole, the evidence in this case was sufficient to allow the prosecutor to make a reasonable inference that it was Appellant who put the rifle in the vehicle.  The prosecutor did not commit misconduct.

## *Jury Instructions*

[¶18]  In his final issue, Appellant challenges the sufficiency of the jury instructions.  Appellant contends that the district court erred in failing to instruct the jury in accordance with our decision in *Eagan v. State*, 58 Wyo. 167, 198, 128 P.2d 215, 226 (Wyo. 1942).  The State contends that an *Eagan* instruction was not appropriate under the facts of this case.  We review the failure to give a proposed jury instruction for an abuse of discretion.  *Mowery v. State*, 2011 WY 38, ¶ 13, 247 P.3d 866, 870 (Wyo. 2011).

> When reviewing questions involving jury instructions, we afford significant deference to the trial court's decisions.  *Farmer v. State*, 2005 WY 162, ¶ 20, 124 P.3d 699, 706 (Wyo. 2005).  "A trial court is given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the instructions in their entirety sufficiently cover[] the relevant issue, reversible error will not be found."  *Roden v. State*, 2007 WY 200, ¶ 21, 173 P.3d 369, 375 (Wyo. 2007), quoting *Duke v. State*, 2004 WY 120, ¶ 90, 99 P.3d 928, 954 (Wyo. 2004).

*Benjamin*, ¶ 37, 264 P.3d at 11.

[¶19]  The district court gave this instruction to the jury:

**Jury Instruction No. 16**

> When a defendant testifies he is entitled to have his testimony judged by you just like any other witness.  You may not disregard his testimony just because he is the accused defendant.  In determining what testimony you

7

believe you should consider all the circumstances and the factors I mentioned in instruction number 1.[2]

Appellant does not claim that this instruction is erroneous, but he does contend that it does not go far enough to satisfy our ruling in *Eagan*. Appellant offered three alternative jury instructions, all of which were aimed at informing the jury of the *Eagan* rule. The first offered instruction was as follows:

> When a defendant testifies he is entitled to have his testimony judged by you just like any other witness. You cannot disregard his testimony just because he is the accused defendant. If his testimony regarding an incident or aspect of the case is undisputed by other witnesses or evidence you should accept it as true but like all other evidence, the weight to be given to any particular testimony or evidence is up to you and if other evidence is inconsistent with the defendant's testimony you should determine by consideration of all evidence whether the defendant's guilt has been proven beyond a reasonable doubt.

The second proposed instruction read:

> The Defendant being the sole witness to the transaction charged as a crime, his testimony must be accepted as true, if not improbable, and if it is not inconsistent with the facts and circumstances shown, but is reasonably consistent therewith.

The third proposed instruction was this:

> Where an accused is the sole witness of a transaction charged as a crime, as in the case at bar, his testimony cannot be arbitrarily rejected, and if his credibility has not been impeached, and his testimony is not improbable, and is not inconsistent with the facts and circumstances shown, but is

---

[2] The circumstances and factors mentioned in instruction number 1 included the witnesses' "conduct, attitude, and manner while testifying;" "physical and mental capacity to have heard or seen the event or thing they testify about;" "ability to remember and to tell here in Court what they heard or saw;" "reputation for honesty and truthfulness or for dishonesty and untruthfulness;" "bias or prejudice, an interest in the outcome of the trial, or any other motive for not telling the truth;" and "[w]hether the facts related are inherently believable or unbelievable."

8

reasonably consistent therewith, then his testimony should be accepted.

The district court rejected all three of these instructions.

[¶20] In *Eagan*, 58 Wyo. at 198, 128 P.2d at 226, we held:

> Where an accused is the sole witness of a transaction charged as a crime, as in the case at bar, his testimony cannot be arbitrarily rejected, and if his credibility has not been impeached, and his testimony is not improbable, and is not inconsistent with the facts and circumstances shown, but is reasonably consistent therewith, then his testimony should be accepted.

Based on this language, we have recognized that the *Eagan* Rule applies only if the defendant's credibility has not been impeached and his testimony is not improbable. *See*, *e.g.*, *Benjamin*, ¶ 42, 264 P.3d at 11-12.

[¶21] Appellant's credibility was impeached in this case. For example, he initially told the police that he was not at the bar on the night of Mr. Walker's shooting. At trial, he admitted that was a lie. He told the police he had loaned his vehicle to a friend that night, but at trial admitted that also was untrue. The record includes other examples. Because Appellant's credibility had been impeached, the *Eagan* Rule did not apply.

[¶22] The State further contends that an *Eagan* instruction was inappropriate because Appellant's testimony was improbable. According to the State, his testimony was "that an enemy of [Mr.] Walker's happened to be waiting in the parking lot for an opportunity to kill [Mr.] Walker and frame someone else by stealing a loaded weapon." The State characterizes this testimony as "remotely possible" but still "improbable," and it therefore asserts that the *Eagan* Rule was inapplicable. We agree, and on this basis as well, conclude that the district court did not err in refusing to give an "*Eagan* instruction" to the jury.

[¶23] Appellant's conviction is affirmed.